UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
: 
ROBERTA CASSELL, : MEMORANDUM & ORDER
: 
Plaintiff, : 15-CV-0734 (ENV)
: 
-against- : 
: 
NANCY A. BERRYHILL, Acting Commissioner of : 
Social Security,[1] : 
: 
Defendant. : 
: 
------------------------------------------------------------ x

VITALIANO, D.J.

Plaintiff Roberta Cassell seeks review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits under the Social Security Act ("the Act"). The parties have filed cross-motions for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). Cassell asks the Court to reverse the Commissioner's final decision and order disability benefits in her favor, arguing that the administrative law judge ("ALJ") failed to develop the record, erred in evaluating Cassell's credibility, and erred in finding that Cassell retains the residual functional capacity ("RFC")[2] for sedentary work. In the alternative, she asks

---

[1] While plaintiff originally brought this action against Acting Commissioner of Social Security Carolyn W. Colvin, Nancy A. Berryhill took over the office on January 23, 2017. Pursuant to Federal Rule of Civil Procedure 25(d), she is automatically substituted as the defendant in this action.

[2] According to SSA regulations, "residual functional capacity" exists when an "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you

1

the Court to remand the case for further proceedings. The Commissioner's motion, of course, seeks affirmance. For the reasons set forth below, the Commissioner's motion for judgment is denied and Cassell's cross-motion is granted to the extent that the matter is remanded for further proceedings consistent with this Memorandum and Order.

## Background

I. Procedural History

On October 19, 2011, Cassell applied for disability insurance benefits, alleging the onset of disability on July 9, 2011, due to allergies, fibrocystic breast disease, asthma, mental problems, memory loss, and anemia. (R. at 182 and 207).[3] The Social Security Administration ("SSA") denied the application on January 20, 2012, finding that Cassell retained the capacity to perform her prior work. (R. at 128 and 131). Thereafter, Cassell requested a hearing before an ALJ. (R. at 132-134). A hearing was convened on September 25, 2012, but Cassell appeared without counsel and, for that reason, the hearing was postponed. (R. at 143). A second hearing date was scheduled for and held on April 15, 2013 before ALJ Michael D. Cofresi. (R. at 144 and 161). Cassell appeared again without counsel, signed a waiver stating that she wished to proceed without representation, and provided testimony. (R. at 95-121). In a decision dated May 13, 2013, the ALJ found that plaintiff was not disabled. (R. at 81). She requested review by the Appeals Council, at which she supplied supplemental evidence to support her disability claim. (R. at 62-63 and 8-23). On December 30, 2014, the ALJ's decision became the final order

---

can still do despite your limitations." 20 C.F.R. § 416.945(a)(1); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). RFC levels are set forth in 20 C.F.R. § 404.1567(b). *See id.*; *see also Ridge v. Berryhill*, 294 F. Supp. 3d 33, 53-55 (E.D.N.Y. 2018) (discussing and applying RFC).

[3] Citations to the underlying administrative record are designated as "R."

2

of the Commissioner when the Appeals Council declined to review it. (R. 1-7). Cassell timely filed this action seeking judicial review.

II. The Administrative Record

A. Cassell's Personal History

Cassell was born in 1963, is a high school graduate, and was 49 years old at the time of the hearing. (R. at 101, 178, 208). From 2005 to July 2011, she worked as a food preparer, cashier, and lastly babysitter. (R. at 101-04). As of the hearing, she lived with her family, who supported her. Additionally, she received food stamps. (R. at 100-01).

As noted previously, her disability application complained that she was disabled by allergies, fibrocystic breast disease, asthma, mental and memory problems, and anemia. (R. at 207). In a Function Report dated December 21, 2011, Cassell indicated that she can take care of herself, but she dresses and bathes slowly due to difficulty with prolonged standing and reaching above her head. (R. at 220). She also needs help, she claimed, lifting the vacuum cleaner as well as with mopping and dusting due to asthma and allergies. (R. at 218). Additionally, she also complained of "degenerative meniscus," which prevented her from standing for long periods of time, stated that sitting caused her legs to get stiff, and contended that kneeling and squatting was difficult due to arthritis in her knee. (R. at 220-221). Climbing stairs triggered her asthma. *Id.* She also noted that "memory loss" prevents her from finishing what she started and she must take notes of what she has to do. (R. at 222-223).

At the hearing on April 15, 2013, Cassell testified that the fibrocystic breast pain, asthma, and the "degenerative meniscus" prevent her from working because the diseases made it difficult to sit or stand for long periods of time. (R. at 105, 112-13). She could walk a maximum of two blocks, stand up for 25 minutes and sit for less than 45 minutes before she had to get up

and stretch. (R. at 113). She testified that she used a nebulizer for asthma, but, when it did not provide relief, she would go to Jamaica Medical Center for treatment. (R. at 107). Cassell also testified that, on average, she slept two to three hours before breast pain, toe spasms, or difficult breathing woke her up. (R. at 111). Finally, she testified that she felt depressed. (R. at 111-12).

B. Medical Evidence

On October 27, 2008, Cassell went to Jamaica Hospital for a routine checkup and was diagnosed with fibrocystic disease, asthma, anemia, and as overweight. (R. at 293). On December 4, 2008, she sought treatment at Jamaica's Emergency Department, complaining that she required oxygen due to her asthma. (R. at 404, 412). She was discharged after receiving a small volume nebulizer. (R. at 410).

A couple of months later, on February 23, 2009, Cassell underwent an excisional biopsy of two masses identified on ultrasound. (R. at 270-71). The results showed that both masses were consistent with lipoma. (R. at 272). On Jun 19, 2009, Cassell reported left leg pain and dizziness on a visit at Medisys Family Health Center. (R. at 315). The health service noted Cassell's history of anemia and believed it may have caused Cassell's dizziness. (R. at 316). Cassell returned to Medisys on April 16, 2010, on July 21, 2010, and on December 16, 2010, complaining of allergy symptoms in the first two cases and wheezing on the last occasion. She was advised to take Singulair, iron supplements for her anemia, and albuterol. (R. at 311-312 and 308).

On October 5, 2011, Dr. Kathleen Mitchell from Jamaica Hospital performed Cassell's annual physical examination. (R. at 335). The diagnosis included asthma, anemia, irregular menses, fibrocystic breast disease, and stress. (R. at 335). Later that month, on October 31, 2011, Dr. Jacqueline Marston from Jamaica Hospital Family Medicine visited Cassell for

4

complaints of back pain. Cassell was diagnosed with knee pain and low back pain. (R. at 333). She complained of dizziness when standing for greater than 30 minutes in the past three years. *Id.* It was unclear whether the knee pain was due to arthritis or patellofemoral syndrome, while the low back pain was probably due to musculoskeletal causes. *Id.* Dr. Marston recommended that Cassell not lock her knees when standing for a long time, that she exercise, and she sit down when feeling dizzy. *Id.* The doctor confirmed the diagnosis of fibrocystic breast disease, asthma, anemia, stress, and irregular menses. *Id.*

Before year's end, on December 7, 2011, at the request of the Commissioner, Cassell was physically examined by Dr. Iqbal Teli, a consultative examiner. (R. at 336-40). The doctor diagnosed a history of asthma, which requires an albuterol inhaler, a history of seizure in childhood, which had disappeared, and a reducible umbilical hernia. (R. at 338). Furthermore, he found that Cassell's gait and stance were normal, although Cassell could not walk on her heels comfortably. (R. at 337). The doctor concluded that Cassell should avoid dust and other respiratory irritants, and lifting weight due to the hernia. (R. at 338). That same day, Cassell was also evaluated by consultative psychologist Arlene Broska, Ph.D., and was diagnosed with a depressive disorder.[4] (R. at 341-345). The doctor recommended that she seek psychiatric intervention and individual psychological therapy "if she [was] not already receiving it." (R. at 344).

On December 29, 2011, Cassell again sought treatment at Jamaica Hospital Medical Center, complaining of bilateral knee pain, aggravated by standing, exertion, and weather change. (R. at 379). She also complained of diffuse pain that traveled from the breast, due to fibrocystic breast disease, to her upper back. *Id.* She was examined by Dr. Svetlana Gavrilova

---

[4] The diagnosis does not specify the type of depressive disorder.

5

who found her positive for myalgia, joint pain, depression, and memory loss. (R. at 380). The medical report also indicated that Cassell did not want to be treated in the rehabilitation department clinic and that she explained that her visit was needed to apply for Social Security disability benefits. (R. at 381). Plaintiff denied this aspect of the account of the examination in her testimony before the ALJ. (R. at 109).

On January 19, 2012, P. Kudler, a state agency-employed psychiatric consultant, reviewed the record. (R. at 347-60). He considered a RFC assessment necessary because of "affective disorders" affecting Cassell, more specifically dysthymia, i.e. a persistent mild depression. (R. at 347 and 350). As a consequence of her mental disorder, the consultant concluded that Cassell suffered from "mild" limitation in conducting activities of daily living, maintaining social functioning, concentration, persistence or pace and that Cassell suffered one or two episodes of deterioration. (R. at 357). In yet another review that day, January 19, 2012, Dr. P. Mulvihill, a state agency medical consultant, reviewed the record and concluded that asthma represents the only limitation to Cassell's work activity; that she can sit for about 6 hours and stand/walk for about 6 hours in an 8 hour workday; and that she can lift and/or carry 25 pounds. (R. at 362).

C. New Evidence Submitted to the Appeals Council

On December 5, 2014, as the rules permit, Cassell introduced new evidence on her appeal. The new documentation included (i) a CFS/fibromyalgia questionnaire,[5] (ii) a panic attack questionnaire, (iii) an anxiety questionnaire, (iv) a depression questionnaire, (v) a mental

---

[5] SSA makes blank questionnaire forms available to guide applicants and their counsel in the marshalling of relevant evidence in connection with a claimed disability condition. *See, e.g.*, SSA-16-BK, "Application for Disability Insurance Benefits," *available at* https://www.ssa.gov/forms/ssa-16-bk.pdf. (last accessed July 28, 2018, at 4:34 p.m.)

6

RFC,[6] and (vi) a physical RFC. (R. at 8-23). The fibromyalgia questionnaire, signed by Dr. Nienaber, seemed to diagnose fibromyalgia. (R. at 12). The panic attack questionnaire reported that Cassell has had an average frequency of 25 panic attacks per month and that she has experienced panic attacks "with the same approximate frequency since 40 years." (R. at 13). The anxiety questionnaire indicated that Cassell suffers "[m]arked restriction of activities of daily living, [m]arked difficulties in maintaining social functioning, deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere)." (R. at 14-15). Both the anxiety and the depression questionnaire reported that Cassell suffered "[r]epeated episodes of deterioration or decompensation in work or work/like settings." (R. at 15 and 17). The mental RFC form reported a "moderately severe" estimated degree of restriction of daily activities. It also indicates that, in a routine work setting, Cassell would have a "moderately severe limitation" as to understanding, carrying out, and remembering instructions; responding appropriately to supervision; performing complex tasks, repetitive tasks, and varied tasks; and a "severe limitation" as to responding to customary work pressures. (R. at 19-20). Finally, the physical RFC reports that were submitted showed that Cassell can sit 4 hours, stand 0 hours, and walk 2 hours in an eight hour work day; can only lift and carry up to 10 lbs., can never crawl or climb; "has consistent difficulty sitting, standing, lifting due to fibromyalgia[;]" and is "in physical pain most days, and nights." (R. at 22-23).

## Standard of Review

Section 405(g) of the Act empowers district courts to review a disability decision of the Commissioner and affirm, reverse, or modify that decision "with or without remanding . . . for a

---

[6] *See* note 2, *supra* (discussing RFC).

7

rehearing." 42 U.S.C. § 405(g); *see Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004). However, when evaluating a determination by the Commissioner to deny a claimant disability benefits, a court may reverse the decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence. *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citing 42 U.S.C. § 405(g)). In this context, "[s]ubstantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971)).

Significantly, "it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Therefore, "the court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991).

## Discussion

### I. Standards of Eligibility

To be eligible for disability benefits, a claimant must establish disability within the meaning of the Act prior to the expiration of the claimant's insured status. 42 U.S.C. §§ 423(a)(1)(A), 423(c). Under the Act, a "disability" is the "inability to engage in any substantial gainful activity[7] by reason of any medically determinable physical or mental impairment . . . . [such that the claimant] cannot . . . engage in any other kind of substantial gainful work which

---

[7] Work is "substantial" if it involves significant physical or mental activity, 20 C.F.R. § 404.1572(a), and "gainful" if it is done for pay or for profit, whether or not profit is realized. 20 C.F.R. § 404.1572(b).

8

exists in the national economy." *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000) (internal citation and quotation marks omitted).

SSA has promulgated a five-step sequential analysis that an ALJ must use to determine whether a claimant is disabled. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 77-78 (2d Cir. 1999). At step one in the sequential analysis, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If she is, the disability claim is denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two to determine whether the claimant has a "severe" impairment that limits her ability to perform basic work-related activities. *Id.* § 404.1520(a)(4)(ii); *Rosa*, 168 F.3d at 77 (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)). If she is not, the claim is denied.

If the claimant has a severe impairment, however, the ALJ proceeds to step three and evaluates whether the impairment meets the criteria of any of the impairments listed in the Commissioner's Appendix. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1; 42 U.S.C. § 404.1520(a)(4)(iii). If so, the claimant is disabled and entitled to benefits. If not, the ALJ must then proceed to the fourth step and determine whether, despite her impairment, the claimant has the RFC to perform her past relevant work.[8] *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e); *see also id.* § 404.1545. The claimant bears the burden of proof as to the first four steps of the process for determining disability status. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). If the claimant proves that her impairment prevents him from performing her past relevant work, the burden shifts to the Commissioner at the fifth and final step. *Id.*

---

[8] "Past relevant work" is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1).

At to the fifth step, if the claimant cannot perform her past relevant work, the ALJ determines, based on the claimant's RFC, whether there is other work that the claimant could perform. 42 U.S.C. § 404.1520(a)(4)(v). In doing so, the ALJ considers four factors: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotations omitted); *Miller v. Comm'r of Soc. Sec. Admin.*, 988 F. Supp. 2d 347, 356-57 (E.D.N.Y. 2013). If the Commissioner can show that the claimant retains the capacity to perform a certain category of work, such as light work or sedentary work, and that such work is available in the national economy, the claimant is not disabled. 20 C.F.R. § 404.1560(c)(2); *see Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). If not, the claimant is disabled and entitled to benefits.

## II. Duty to Develop the Record

A full factual record is critical to an adjudicated determination made by any administrative agency. In line with that understanding, SSA's controlling mandate is that "Social Security proceedings [be] inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11, 120 S. Ct. 2080, 2085, 147 L. Ed. 2d 80 (2000). ALJs bear an affirmative duty to develop a claimant's medical history for the 12 months prior to the date that the claimant filed for disability, should the evidence presented be insufficient to determine whether the claimant is disabled. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 2011); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 343 (E.D.N.Y. 2010). At bottom, the ALJ must make "*every* reasonable effort" to obtain reports from medical sources to fill gaps in the administrative record. 20 C.F.R. § 416.912.

To implement this guidance, where evidence received from a medical source is inadequate to determine whether a claimant is disabled, the ALJ should "recontact [the claimant's] medical source," where, as here, "recontact is the most effective and efficient way to obtain the information needed to resolve an inconsistency or insufficiency in the evidence received from that source." 77 Fed. Reg. 10651 (Feb. 23, 2012) (codified at 20 C.F.R. § 404.1512). Denial of benefits in the absence of some record development is error. *See Rosa*, 168 F.3d at 80 (reversing ALJ's decision because medical record was not fully developed); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) ("When there are gaps in the administrative record . . . we have, on numerous occasions, remanded . . . for further development of the evidence."); *Valerio v. Comm'r of Soc. Sec.*, No. 08-CV-4253, 2009 WL 2424211, at *10-11, *16-17 (E.D.N.Y. Aug. 6, 2009).

In Cassell's case, the record reveals at least three significant gaps in the evidence, requiring further development of the record. First, Dr. Marston's report suggested arthritis or patellofemoral syndrome and musculoskeletal causes respectively were possible causes of Cassell's knee and back pain. (R. at 333). However, no other medical opinion was sought to assess whether Cassell suffered from these ailments. Indeed, the ALJ never factored, or acknowledged any consideration of, these ailments in his final evaluation of Cassell's conditions. The dramatic relevance of this mistake is underscored by the supplemental evidence filed with the Appeals Council. The newly proffered evidence included a CFS/fibromyalgia documentation suggesting that plaintiff suffers fibromyalgia, i.e., a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues.[9] (R. at 10-12).

---

[9] Mayo Clinic, *Fibromyalgia* (Aug. 11, 2017), https://www.mayoclinic.org/diseases conditions/fibromyalgia/symptoms-causes/syc-20354780 (last visited Jul. 25, 2018).

11

*See Mauro v. Berryhill*, 270 F. Supp. 3d 754, 762 (S.D.N.Y. 2017) (holding that a case can be remanded for consideration when there is a "reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.").

Second, the ALJ should have squarely dealt with the inconsistency between the medical evaluations of the state agency consultants, two of four of whom opined solely on the basis of the record, and the diagnoses of Jamaica Hospital's doctors who physically visited with Cassell. The ALJ should have solicited further medical evidence and/or sought testimony from Drs. Marston and Gavrilova, both of whom directly treated plaintiff. *See Riley v. Colvin*, 211 F. Supp. 3d 638, 651 (S.D.N.Y. 2016) ("The governing statute provides that the ALJ 'shall make *every reasonable effort* to obtain from the individual's treating physician (or other treating health care provider) *all medical evidence* . . . necessary in order to properly make' the disability determination.") (emphasis added); *see also Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016) ("[E]specially in a pro se case, remand for further administrative proceedings is appropriate 'where there are gaps in the administrative record,' because it is the court's duty to determine whether the 'ALJ adequately protected the rights of a pro se litigant by ensuring that all of the relevant facts are sufficiently developed and considered.'").

Furthermore, even though SSA, not the reviewing court, should weigh conflicting evidence, *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998), in weighing what appears to be conflicting evidence, the ALJ must set forth the crucial factors used in that determination "to enable [the court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Here, instead, the ALJ failed to set forth the reasons as to why evidence unfavorable to Cassell's claim for disability benefits were granted more weight than the favorable evidence.

Finally, the ALJ stated that his conclusions were mainly based on Dr. Tali's examination. The doctor also diagnosed a reducible umbilical hernia. (R. at 338). This new information should have prompted the ALJ to request additional medical evidence concerning the gravity of the umbilical hernia and how it affected Cassell's capability to work. *See Riley*, 211 F. Supp. 3d at 651. The fact that the umbilical hernia might be reducible is not conclusive as to how the presence of the hernia would affect Cassell's ability to work or whether reduction was feasible in light of her conditions.[10]

The law leaves no room to doubt that a failure to fill evidentiary gaps constitutes clear legal error. *See, e.g., Boyd v. Apfel*, 1999 WL 1129055, at *4 (E.D.N.Y. Oct. 15, 1999) (an ALJ "failed to meet his affirmative obligation to develop the record" where "the record contain[ed] no reports from [claimant's] visits [with several treating physicians] or any indication that the [ALJ] sought such reports" (citing 20 C.F.R. § 404.1512(e)(2)); *see also Colon v. Astrue*, 2011 WL 3511060, at *11 (E.D.N.Y. Aug. 10, 2011) ("[T]he Court finds that the ALJ committed legal error . . . for failing to mention [the treating physician] at all, indicating that his opinions and ongoing treatment history with plaintiff were not considered."). Given the fundamental unfairness of judgment, in a non-adversarial proceeding on an incomplete record, moreover, the ordering of a consultative examination and reviewing the resulting report does not excuse the failure of the ALJ to satisfy this obligation, where treating sources are not consulted. *See, e.g., Hilsdorf*, 724 F. Supp. 2d at 345. The only remedy is remand.

### III. The Appeals Council

In any event, setting aside for purposes of argument, the errors made by the ALJ

---

[10] American College of Surgeons, *Adult Umbilical Hernia Repair* (Apr. 2016), https://www.facs.org/~/media/files/education/patient%20ed/adultumbilical.ashx (last visited Jul. 25, 2018).

13

mandating remand, the Appeals Council's refusal to review the ALJ's decision, with the record now supplemented by new evidence, would itself constitute reversible error. A claimant applying for review of an adverse administrative decision is entitled "to submit new evidence to the Appeals Council without a 'good cause' requirement." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.970(b), 416.1470(b); 42 U.S.C. § 405(g)). SSA expressly recognizes claimants' right to submit new evidence to the Appeals Council, as the Notice of Decision issued by the ALJ expressly provides for the submission of "*any* new evidence" with the appeal. (R. 67). Equally important, once this new evidence is submitted to the Appeals Council, whether or not the Appeals Council takes it up, it "becomes part of the administrative record for judicial review." *Perez*, 77 F.3d at 45.

What's more, the supplemental evidence submitted to the Appeals Council by Cassell is powerfully significant. The new evidence, frankly, contradicts the factual bases for the ALJ's decision. Contrary to the ALJ's conclusion that Cassell's activity of daily living are generally intact (R. at 75), the anxiety questionnaire reports a "[m]arked restriction of activities of daily living" and "frequent failure to complete tasks in a timely manner in work settings." (R. at 14-15). The evidence also shows Cassell's severe panic attack problem, an average of 25 attacks each month, which was never a focus of the ALJ's analysis of plaintiff's disability claim.

Finally, although the ALJ concluded that Cassell's impairments were insufficient, individually or collectively to reduce her residual functional capacity below the full range of sedentary work, the supplemental evidence that the Appeals Council ignored and the ALJ had failed to develop tells another story. (R. at 80). The new evidence supports a finding that Cassell suffers from a disorder that was never mentioned during the hearing before the ALJ, *i.e.*, fibromyalgia, and that condition could explain the combination of symptoms and ailments

suffered by Cassell. This last proffer of evidence expressly undermines the findings on which ALJ's decision was based, too. (R. at 80). The failure of the Appeals Council to review and reverse the adverse notice of determination denying benefits to Cassell was separate error that would independently warrant remand.

## Conclusion

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is denied, and Cassell's cross-motion is granted to the extent that the final order of the Commissioner is vacated, the ALJ's decision is reversed, and the matter is remanded for further proceedings consistent with this Memorandum and Order.

The Clerk of Court is directed to enter judgment accordingly and to close this case for administrative purposes.

So Ordered.

Dated: Brooklyn, New York
       July 31, 2018

/s/ Hon. Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge